[Cite as *Forester v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-365.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOHN W. FORESTER

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2009-08357

Judge Alan C. Travis
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this case alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the London Correctional Institution (LCI) pursuant to R.C. 5120.16. On April 20, 2009, plaintiff was working in the "dish room" of the LCI kitchen loading pans into the dishwasher. While trying to separate two such pans, plaintiff cut his left index finger on a sharp edge of one of the pans. Plaintiff asserts that defendant was negligent in permitting pans with sharp edges to be used in food service, that he was not properly trained in the handling of the pans, and that he was not provided proper supervision or safety equipment while working in the kitchen.

{¶ 3} In order to prevail upon his claim of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St.3d 79, 81, 2003-Ohio-2573,

citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77. Defendant owed plaintiff the common law duty of reasonable care. *Justice v. Rose* (1957), 102 Ohio App. 482, 485. Reasonable care is that which would be utilized by an ordinarily prudent person under similar circumstances. *Murphy v. Ohio Dept. of Rehab. &* Corr., Franklin App. No. 02AP-132, 2002-Ohio-5170, ¶13. A duty arises when a risk is reasonably foreseeable. *Menifee*, supra, at 75. Such a duty includes the responsibility to exercise reasonable care to protect inmates against those unreasonable risks of physical harm associated with institutional work assignments. *Boyle v. Ohio Dept. of Rehab. & Corr.* (1990), 70 Ohio App.3d 590, 592.

**{¶ 4}** While the court is cognizant of a "special relationship" between an inmate and his custodian, no higher standard of care is derived from the relationship. *Clemets v. Heston* (1985), 20 Ohio App.3d 132. The state is not an insurer of the safety of its prisoners; however, once it becomes aware of a dangerous condition in the prison, it is required to take the degree of reasonable care necessary to protect the prisoner from harm. Id.

**{¶ 5}** Plaintiff testified that he began working in the kitchen at LCI soon after he arrived from another correctional institution in December 2007. According to plaintiff, he initially worked on the service line before moving to the dish room. Plaintiff stated that during the time that he worked on the service line, he noticed that some of the large, rectangular, metal pans from which food was served were jagged and sharp at the edges. Plaintiff testified that he informed Food Service Manager Shelton about some of the pans and that they were removed from service soon thereafter. Plaintiff further testified that he witnessed four or five inmates cut themselves on the pans prior to his injury.

**{¶ 6}** With regard to the training he received, plaintiff testified that at the end of a shift soon after he began working in the LCI kitchen, he and other inmates were ushered into a food service coordinator's office at the end of a shift one day and given

documents to read and initial. Plaintiff admitted that he began to read and initial the documents, but initialed many of them without reading them because he was tired. Plaintiff did not recall if any of the documents related to the handling of pans. Plaintiff stated that he did not consider such a procedure adequate training for working in the kitchen.

**{¶ 7}** Plaintiff testified that on the day that he was injured, he was in the dish room working at a fast pace loading dishes and pans into a large dishwasher. Plaintiff stated that he came upon two large metal pans, approximately 12 x 18 inches in area and six inches deep, that were stuck together and had to be separated before being put into the dishwasher. According to plaintiff, he noticed that one of the pans had a sharp, jagged edge, but he was trying to do "too much at one time" and disregarded any potential danger because stopping to notify a supervisor about the pan "would have caused a back up." Plaintiff testified that as he attempted to separate the pans, his hands slipped and he severely cut his left index finger. Plaintiff stated that he immediately rinsed the finger in the sink and reported to Shelton's office, and that Shelton sent him to the infirmary for treatment. (Plaintiff's Exhibits A and B.)

**{¶ 8}** With regard to safety equipment, plaintiff testified that there was one pair of rubber gloves in the dish room, but that it was only for the inmate assigned to operate the dishwasher and that he and the other two inmates assigned to the dish room were not issued gloves and were never ordered or instructed to wear gloves. Plaintiff further testified that while there were several food service coordinators assigned to work in the kitchen during meal preparation, service, and clean up, it was rare for a staff member to be in the dish room.

**{¶ 9}** Inmates Ronald Bloodworth, Scott Manley, and Robert Chinn all worked in the LCI kitchen with plaintiff at some point. Bloodworth testified that he was aware of the jagged edges on the pans; that he did not wear gloves when dealing with the pans, but never cut himself; and that he did not receive any training or sign any documents prior to working in the kitchen. Manley testified that he did not receive specific training

prior to working in the kitchen, but that he did sign documents similar to those described by plaintiff and that he viewed a safety video some months after he started working. Manley further testified that he did wear rubber gloves when working with the pans, but only after another inmate, not a staff member, made him aware that they were available. Manley also stated that when an inmate brought a pan with a jagged or sharp edge to the attention of a kitchen staff member, it was immediately removed from service. Chinn testified that, like Manley, he did not receive any training when he started working in the kitchen, but that he did view a safety video after some months. Chinn stated that he was not informed of, and was not aware of, the availability of rubber gloves.

{¶ 10} Timberly Minor has worked in the food service department of LCI for nine years, is currently the Correctional Food Service Manager 2 in charge of the operation of the LCI kitchen, and was acting in that capacity at the time plaintiff was injured. Minor explained that at the time plaintiff began working in the kitchen, inmates received "on the job training" by other inmates, and were required to read and sign a "Safety Acknowledgements and Procedures" document which explained kitchen safety procedures. Minor stated that the use of a video was implemented later, largely due to plaintiff informing her that he had viewed such a video prior to working in the kitchen of another correctional institution. Minor testified that while she did not personally train plaintiff, all inmates working in the kitchen go through training and they are told to bring any concerns to the attention of kitchen staff. With regard to the pans in question, Minor testified that they become sharp and jagged with use and that when kitchen staff are made aware that a pan is in such condition, it is removed from service immediately and thrown away. Minor further testified that kitchen staff inspect the pans for damage on the weekends and remove and dispose of any that are deemed dangerous. Minor stated that heavy rubber gloves are available for all inmates who work in the kitchen. (Defendant's Exhibit 15.) According to Minor, inmates are not required to wear the

gloves, but they will be provided if requested. Minor testified that some inmates prefer to wear the gloves and some chose not to at their own discretion.

{¶ 11} Based upon the foregoing, the court finds that plaintiff failed to establish that defendant committed a breach of its duty of care. While the training plaintiff received may have been minimal, the fact that plaintiff had worked in the kitchen of at least one other correctional institution prior to arriving at LCI, and had worked in the LCI kitchen for at least a year before being injured establishes that he was, or should have been, familiar with the operational and safety procedures of the kitchen. Moreover, plaintiff admitted that at the time he was injured, he noticed the sharp edge on the pan and chose not to inform kitchen staff of it because it would have caused a "back up." Given plaintiff's knowledge of the danger that the pan presented, and his choice to ignore it, the court finds that plaintiff's lack of care was the sole proximate cause of his injury. Accordingly, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

Steven C. McGann
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

MR/cmd
Filed January 4, 2011
To S.C. reporter January 27, 2011